THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v. MORRIS MALINSKY, DAVID LUSTIGMAN and ROBERT FELT, Defendants.

Supreme Court, Criminal Term, Queens County, June 30, 1966.

*Nat H. Hentel, District Attorney (Benjamin J. Jacobson of counsel), for plaintiff. Maurice Edelbaum for defendants.*

PETER T. FARRELL, J. The Court of Appeals has withheld its determination of defendants' appeals from a judgment affirming a judgment of this court, convicting them of criminally con-

cealing and withholding stolen property, pending a further hearing on defendants' motion to suppress and for which the case was remitted to this court (*People* v. *Malinsky,* 15 N Y 2d 86, 96). In accordance with that directive a further hearing has been had but the People have neither utilized their fresh opportunity of showing that the police actually received a tip from a dependable informer nor have they shown that the police had adequate evidence, apart from or in addition to the alleged informer's communication to establish the existence of probable cause for defendants' arrest. And, the prosecution firmly refuses to disclose the identity of the informer. I conclude that the People have failed to sustain the burden allotted to them by the opinion of the Court of Appeals and if the issue were before this court for an original determination and disposition, an appropriate order would be made. However, the Court of Appeals has retained jurisdiction and has merely remitted the matter to this court for the limited purpose of conducting a further hearing and making findings upon the factual questions involved. This memorandum, therefore, constitutes the findings and conclusions of this court, based on the evidence received during the further hearing.

On May 6, 1965, when the matter was first set down for the further hearing, the District Attorney read into the record a statement to the effect that the People declined to disclose the name of the informer, that they had no other evidence to offer and that they rested upon the record then before the Court of Appeals. Thereafter, the District Attorney made an application to reopen the hearing so as to enable him to proceed with other evidence that had come to his attention subsequent to May 6, 1965. The application was granted and the hearing proceeded.

During its course, the prosecutor proffered and the court admitted evidence tending to show that in August of 1961, an attempt was made to break and enter the building and warehouse of H. B. Cohen Drug Company in the Astoria or Long Island City section of Queens County by piercing the wall of an adjoining ironworks so as to gain access to the interior of the drug establishment. A member of the Safe and Loft Squad of the New York City Police Department read a newspaper account of the affair, proceeded to the place of the occurrence and made an investigation which led him to the conclusion that the venture was a professional job. The officer, knowing that Morris Malinsky and David Kessler were due to appear in the local Felony Court — presumably because of their alleged

implication in the burglary attempt—attended at the court in order to observe the men and the means of transportation which they used. His ultimate aim was to put the two under continuous surveillance so that, if fortune favored the police, Malinsky and Kessler might conceivably be taken in the actual commission of a crime. The District Attorney conceded that this Long Island City warehouse was miles distant from the building in which defendants were eventually arrested and that the criminal project there attempted was completely unrelated to the crime for which defendants were arrested, tried and convicted in this court.

Thus, the " tailing " of these defendants after their appearance in the Felony Court was purely a standing operating procedure employed by the Safe and Loft Squad for the purpose already mentioned. Malinsky and Kessler were kept under surveillance from about September 18, 1961 until January 10, 1962, the date of their arrest in this case. Malinsky was first seen at the premises 156-08 107th Avenue on Sunday night, January 7, 1962. By reference to the record on appeal now before the Court of Appeals it appears that it was on January 8, 1962, that the unidentified informer told Detective Sullivan that the latter would find a lot of stolen goods at the 107th Avenue building and that Lustigman and Malinsky were involved.[1] The evidence received on the further hearing before me now discloses that when the police established their " plant " at the building on the evening of January 9, 1962, the station wagon then parked in the driveway[2] was registered in the name of Robert Felt and that, some time after the arrests were made (Jan. 10, 1962) the police learned, somehow, that the building in question was leased to Felt who was, consequently, the legal occupant of the place. In the most critical aspect of the case, the evidence received on the further hearing leaves no doubt that, prior to the arrest, the police had no knowledge as to who or where the drug cartons had come from or whether they had been stolen and that their only information in the matter had come from an unnamed informer.[3] It was not until after the arrest that the police ascertained the fact. And, during and at the conclusion of the hearing, the District Attorney adhered to the position adopted in his statement of May 6, 1965.

For the existence of probable cause for the arrest the District

1. Minutes of pretrial hearing, folios 200, 201, 205, 206, 240, 248.

2. *Id.,* folio 137.

3. The People offered no independent evidence of the communication and no evidence amplifying Detective Sullivan's assertion of the informer's reliability.

Attorney now relies upon the nameless informant's communication, taken together with (1) the officer's knowledge of Malinsky's criminal background; (2) the opinion of the police that the attempt to break into the Cohen warehouse had been made by a professional criminal; (3) the suspicion of the police that Malinsky was the perpetrator of the attempt just referred to;[4] (4) the fact that a considerable quantity of the same sort of loot that might have been obtained from the Cohen place was stored in the 107th Avenue building;[5] (5) the officer's knowledge that Malinsky was not in the drug business which, in view of his presence in and about the 107th Avenue building, created a " strong suspicion " in the minds of the police " that this was stolen merchandise ". I conclude, to the contrary, that the evidence does not make out probable cause for the arrest.

Toward the end of the first phase of the further hearing, defendants' counsel requested that a transcript of Detective Kavic's Grand Jury testimony, his notebook and various forms made out by him be turned over for inspection, prior to cross-examination. Additionally, he asked that Detectives Weber and Sullivan be made " available at the next hearing ", together with the notes to which they referred in their prior testimony so that counsel might inspect them and decide whether " to recall them for further cross-examination pursuant to the decision of the Court of Appeals ". The District Attorney acquiesced and the hearing was adjourned to a specified date but the interim engagements of counsel on both sides prevented its resumption until February 24, 1966.

In the second phase of the further hearing, Detective Kavic was recalled and testified under direct and cross-examination. His notebook was produced and turned over to defendants' counsel who examined it and referred to its content during the cross-examination. No question was raised as to the District Attorney's performance, in the meantime, of the rest of his earlier engagement to make the other materials and the other detectives available. Shortly before the conclusion of Detective Kavic's testimony the District Attorney inquired whether defendants' counsel wanted the other detectives. The question initiated an exchange of questions and remarks, the final result of which was that the adversaries agreed to rest upon the

---

4. His connection with the attempt was not established on the further hearing, either directly or circumstantially.

5. Detective Kavic testified that the stack of cartons was at least 12 feet high and 10 feet wide and, in his opinion, would, at least have filled a 30-foot trailer.

evidence then before the court,[6] without calling the other witnesses. I conclude that defendants thereby waived their right to cross-examine Detective Sullivan with the aid of his notes.

In view of the delay in concluding this matter it appears regrettably necessary to note that although the District Attorney requested and was given leave to submit a memorandum to the court upon a fixed date and although some months have elapsed since that date, no such memorandum has been filed.

---

6. Shortly afterward, the District Attorney renewed his prior effort to put a number of exhibits in evidence. They were excluded on defendants' objection.